IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JERRY CRICKON**,

    Plaintiff,

v.

**UNITED STATES**,

    Defendant.

Case No. 3:12-CV-0684-SI

**OPINION AND ORDER**

Marianne Dugan, 259 East Fifth Avenue, Suite 200-D, Eugene, Oregon 97401. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, Natalie Wight, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 Southwest Third Avenue, Suite 600, Portland, Oregon 97204. Attorneys for Defendants.

**Michael H. Simon, District Judge.**

    Plaintiff filed his complaint in this action alleging three causes of action under the Federal Tort Claims Act ("FTCA"): negligence, false imprisonment, and a constitutional tort. Defendant filed a motion to dismiss for lack of jurisdiction and failure to state a claim. At oral argument, the Court granted Defendant's motion to dismiss with leave to replead. Plaintiff then

PAGE 1 – OPINION AND ORDER

filed his First Amended Complaint, alleging two causes of action under the FTCA: negligence and false imprisonment. Defendant filed a motion to dismiss the First Amended Complaint for lack of jurisdiction and failure to state a claim. Dkt. 31. For the reasons that follow, Defendant's motion is granted and this case is dismissed without leave to replead.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Baca*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

PAGE 2 – OPINION AND ORDER

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

## BACKGROUND

Crickon was convicted in the United States District Court for the Northern District of Illinois under 21 U.S.C. § 846 on or about July 14, 2000. He was sentenced to 151 months in prison, and his scheduled release date with credit for good time was February 9, 2010. Crickon was assigned to the Sheridan, Oregon federal prison facility.

In 2007 the Federal Bureau of Prisons ("BOP") notified Crickon that he was eligible for the Residential Drug Abuse Program ("RDAP") under 18 U.S.C. § 3621(e). It also informed him, however, that his previous conviction for voluntary manslaughter made him ineligible for a discretionary one-year sentence reduction under 18 U.S.C. § 3621(e)(2)(B).

On August 9, 2007, Crickon filed in the United States District Court for the District of Oregon a Court a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, alleging that the BOP wrongfully declared him ineligible for the discretionary sentence reduction. The Honorable Ancer L. Haggerty denied the petition, and Crickon appealed to the United States Court of Appeals for the Ninth Circuit. On appeal, Crickon argued that the regulation prohibiting his early release, 28 C.F.R. § 550.58(a)(1)(iv), was invalid under the Administrative Procedures Act ("APA"). The Ninth Circuit found that the regulation was invalid under the APA because "[t]he BOP offered absolutely no rationale for its decision to use the inmate's criminal history as a surrogate for early release ineligibility."[1] *Crickon v. Thomas*, 579 F.3d 978, 984 (9th Cir.

---

[1] The challenged regulation reads: "As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release: . . . (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses[.]" 28 C.F.R. § 550.58(a)(1) (2000), *later codified at* 28 C.F.R. § 550.55(b)(4) (2009).

PAGE 3 – OPINION AND ORDER

2009); First Am. Compl. ¶ 13. The BOP promulgated the same regulation through the APA's notice and comment procedures and published it in final form on January 14, 2009, providing additional rationale for the exclusion of persons with certain prior convictions from consideration for the discretionary RDAP early release. 74 Fed. Reg. 1892 (Jan. 14, 2009) (to be codified at 28 C.F.R. § 550.55). In 2012, the regulation was upheld by the Ninth Circuit. *Peck v. Thomas*, 697 F.3d 767, 776 (9th Cir. 2012) ("We join our sister circuits in holding that the [BOP] has not violated the APA in excluding inmates from consideration for early release who have a current conviction for felon in possession or a past conviction for homicide, forcible rape, robbery, aggravated assault, arson, kidnapping, or child sexual abuse.").

The Ninth Circuit issued its opinion on Crickon's appeal on August 25, 2009. The Ninth Circuit issued the Mandate transferring jurisdiction back to the district court on October 19, 2009. The Ninth Circuit "remand[ed] for the district court to grant Crickon's petition and instruct the BOP to reconsider Crickon's eligibility for early release under § 3621(e)(2)(B) without regard to his prior conviction for voluntary manslaughter." *Crickon*, 579 F.3d at 989. On February 8, 2010, Judge Haggerty issued an Order compelling the BOP to "reconsider petitioner's eligibility for a discretionary sentence reduction pursuant to 18 U.S.C. § 3621(b) upon completion of the BOP's Drug and Alcohol Treatment Program." Dkt. 32, Ex. 2, at 3.

In his original complaint, Crickon alleged that he completed RDAP on or about February 9, 2010, which was one day after Judge Haggerty issued his Order implementing the mandate. The Amended Complaint, however, is silent as to when Crickon completed RDAP. At oral argument, counsel for both parties agreed that on or within a few days of February 9, 2010, is Crickon's RDAP completion date. Crickon was released on February 9, 2010, his originally-scheduled release date, without any reduction in sentence relating to completion of RDAP.

On August 9, 2011, Crickon presented the BOP with a three-million dollar claim for damages, alleging that he was incarcerated one year longer than necessary as a result of being denied the discretionary early release for completing RDAP. The BOP rejected this claim on October 17, 2011, and Crickon filed his original complaint in this Court on April 17, 2012.

## DISCUSSION

Defendant argues that this Court does not have jurisdiction because there was no FTCA waiver of sovereign immunity for the alleged conduct. Defendant asserts that the original March 2007 decision of the BOP was valid under the then-current regulations, that the decision was protected by the "due care" exception to the United States' waiver of sovereign immunity, and that the BOP had no duty to reconsider its decision until after Judge Haggerty's February 8, 2010 Order. Defendant also argues that Crickon fails to state a cognizable injury. Crickon responds that upon the issuance of either the opinion or the mandate by the Ninth Circuit, the BOP was required to reconsider Crickon's RDAP early release eligibility without waiting for Judge Haggerty's Order and that the failure to do so was improper and thus not within the "due care" exception to the waiver of sovereign immunity under the FTCA.

**A. Jurisdiction**

Defendant's first argument is that the Court lacks subject matter jurisdiction over this case and that the action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Jurisdiction is a threshold matter that should be considered before addressing the merits of a plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–96 (1998). When evaluating its jurisdiction, the "district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint." *Americopters, LCC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

"It is elementary that 'the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586) (1941)). The United States enjoys immunity from suit unless there is "an express waiver of this immunity by Congress." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) (quotation and citation omitted). If the government consents to be sued, the waiver must be express and cannot be implied. *Mitchell*, 445 U.S. at 538. Without such an express waiver, the Court does not have jurisdiction.

Through the FTCA, the United States has waived sovereign immunity for certain torts committed by federal employees while in the scope of employment. 28 U.S.C. § 1346(b)(1) (2011). The FTCA, however, expressly limits the waiver of sovereign immunity under various circumstances. As relevant here, the waiver of sovereign immunity does not apply to

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (2006). The first clause is known as the "due care" exception to the waiver of sovereign immunity. The second clause is known as the "discretionary function" exception.

**1. Due care exception to the waiver of sovereign immunity**

Defendant argues that the due care exception to the waiver of sovereign immunity applies in this case because the BOP was merely following, or executing, a regulation when it denied Crickon's early release in 2007, and was under no obligation to reconsider that denial until after Judge Haggerty issued his Order on February 8, 2010. Crickon responds that although the due care exception to the waiver of sovereign immunity in the FTCA may have applied in 2007,

PAGE 6 – OPINION AND ORDER

it did not apply in 2009, after the Ninth Circuit held the regulation relied upon by the BOP invalid under the APA. Crickon argues that the BOP was obligated to reconsider Crickon's early release either upon the issuance of the Ninth Circuit's opinion or mandate, even before Judge Haggerty issued his Order.[2]

### a. Obligations upon the issuance of the opinion by the Ninth Circuit

In Crickon's original habeas case, neither party nor the district court had an obligation to act upon the issuance of the *opinion* by the Ninth Circuit. Decisions by the Court of Appeals are not effective until the issuance of the appellate *mandate*. *See U.S. v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990) ("The legitimacy of an expectation of finality of an appellate order depends on the issuance or not of the mandate required to enforce the order. We have stated that until a mandate is issued, a case is not closed. The parties may petition the court for a rehearing. The jurisdiction of the court of appeals does not terminate until issuance of the mandate. . . . Thus, finality of an appellate order hinges on the mandate, as does a defendant's expectation of finality.") (quotations and citations omitted); *see also Carver v. Lehman*, 558 F.3d 869, 878-79 (9th Cir. 2009) ("Until the mandate has issued, opinions can be, and regularly are, amended or withdrawn, by the merits panel at the request of the parties pursuant to a petition for panel rehearing, in response to an internal memorandum from another member of the court who believes that some part of the published opinion is in error, or *sua sponte* by the panel itself."). Further, the mandate that was issued on October 19, 2009, expressly states that the "judgment of this Court, entered 8/25/09, takes effect this date." Dkt. 27-2. Accordingly, the decision of the Ninth Circuit was not effective until the mandate was issued on October 19, 2009.

---

[2] At oral argument, Crickon focused his argument on the date the Ninth Circuit issued its mandate rather than the date the Ninth Circuit released its Opinion.

PAGE 7 – OPINION AND ORDER

### b. Obligations upon the issuance of the mandate by the Ninth Circuit

Federal Rule of Appellate Procedure 41(c) states: "Effective Date: The mandate is effective when issued." Based on this rule, Crickon argues that the BOP had an obligation to reconsider his early release eligibility as of the date the Ninth Circuit mandate issued, October 19, 2009. Crickon also relies on the advisory committee notes to Federal Rule of Appellate Procedure 41(c), which state that the mandate is effective when the court issues it, the effectiveness is not delayed until receipt of the mandate by the trial court or until the trial court acts upon it, and that as of the date of issuance the "parties' obligations become fixed." Fed. R. App. P. 41(c) advisory committee notes. Defendant counters that it was not obligated to comply with the Ninth Circuit mandate until after the district court issued its order implementing the mandate.

It is undisputed that an appellate mandate is effective as of the date issued; the dispute here relates to what that means for the parties and their rights and obligations. As of the issuance of an appellate mandate, the opinion of the Court of Appeals is binding, has precedential authority, and in a situation such as this case, the regulation invalidated by the Ninth Circuit could not have been reasonably relied upon by the BOP in denying early release eligibility for inmates after October 19, 2009. Thus, the invalidation of the regulation occurred when the Ninth Circuit issued the mandate. The invalidation did not need to wait for the district court to act upon the mandate. That does not mean, however, that the *parties* in the case were required to act upon the mandate immediately upon its issuance and before the district court's Order.

Crickon cites to the advisory committee notes and cases dealing with inapposite factual situations. Crickon cites to no authority holding that mandates are generally issued with the expectation that the parties will or must act upon them immediately and independently of the district court's order interpreting and implementing the mandate. If parties were generally

PAGE 8 – OPINION AND ORDER

obligated to act upon the issuance of an appellate mandate before the trial court issued an implementing order, as Crickon argues, that could result in parties acting upon their own possibly incorrect interpretation of an appellate mandate, with the district court later issuing an order instructing the parties differently based on a different interpretation. Additional harm may be created by the conduct that parties engage in based on their own interpretation of the mandate. There also may be situations where the parties themselves have different interpretations of the effect of the appellate court's mandate and opinion. The better interpretation of Rule 41(c), therefore, is that the mandate is effective upon issuance and any decision by the Court of Appeals (such as invalidating a rule or regulation) is binding and precedential authority upon issuance of the mandate, but that the parties in the underlying action generally must wait for the district court order before there is any obligation to act on the mandate in the case giving rise to the mandate.[3]

This interpretation also comports with the advisory committee notes. Although the advisory committee notes are not binding on the Court, they are "of weight" in interpreting the rules. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988); *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444 (1946). In addition to explaining when the mandate is effective, the advisory committee notes on Rule 41(c) expressly state that the addition of the subsection "is consistent with the current understanding." Fed. R. App. P. 41 advisory committee notes.

The Federal Rules of Civil Procedure were amended in 1998 to add subsection 41(c). At that time, the law was well established that appellate court mandates returned jurisdiction to the district court. *See, e.g., Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995) ("Just as the

---

[3] There may be situations in which the mandate by a Court of Appeals is properly directed to the parties, such as when the appellate court reverses the district court's grant of an injunction or orders a stay or injunction of its own. That issue, however, is not raised in this case.

PAGE 9 – OPINION AND ORDER

notice of appeal transfers jurisdiction to the court of appeals, so the mandate returns it to the district court."); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) ("Once we affirmed the District Court on appeal and returned the mandate, however, the District Court reacquired jurisdiction over the case."); *Sgaraglino v. State Farm Fire & Cas. Co.*, 896 F.2d 420, 421 (9th Cir.1990) ("Upon issuance of the mandate, the case was returned to the district court's jurisdiction").

The law was also well established that mandates were generally not instructions to the parties, but instructions to the district court, subject to the district court's interpretation. As explained by the United States Court of Appeals for the Federal Circuit:

> Interpretation of an appellate mandate entails more than examining the language of the court's judgment in a vacuum. *See* Fed. R. App. P. 41(a) (appellate court's mandate includes both the judgment and the opinion of the court). As an initial matter, every appellate court judgment vests jurisdiction in the district court to carry out some further proceedings. In some cases, those further proceedings may be purely ministerial, as when a judgment for the plaintiff is reversed and the only matters that remain for the district court are to dismiss the complaint and enter the judgment in the docket. Frequently, however, the disposition of a case in the court of appeals will require the district court to undertake more significant proceedings. In either case, the nature of the district court's remaining tasks is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion.

*Exxon Chem. Patents, Inc. v. The Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998). A case from the United States Court of Appeals for the Third Circuit further illustrates this principal. *USX Corp. v. The Penn Cent. Corp.*, 130 F.3d 562 (3d Cir. 1997). In *USX Corp.*, the district court for the Eastern District issued an injunction staying the parties from prosecuting an action in the Western District. *Id*. at 567. The Third Circuit reversed the injunction in a decision issued on December 12, 1995. The mandate from the Third Circuit was delayed until the Supreme Court denied the petition for *certiorari*, which occurred on May 28, 1996. One party filed a

PAGE 10 – OPINION AND ORDER

motion on May 30, 1996, acting upon the opinion of the Third Circuit reversing the district court (which became the final appellate opinion when the Supreme Court denied the petition for *certiorari*). *Id.* The Third Circuit mandate was issued on June 3, 1996. The parties acted upon the mandate by filing documents on June 7 and June 12, 1996. *Id*. The district court acted on the mandate on June 25, 1996, and a party filed a notice of dismissal under Federal Rule of Civil Procedure 41(a)(1) shortly after entry of the district court's order. *Id*. The Third Circuit held that the filings made before the June 25, 1996, opinion of the district court implementing the mandate were null and that the notice of dismissal on June 25, 1996, after the district court's order implementing the mandate, was the only viable pleading. *Id*. at 567-68. The Third Circuit found that the "stay continued through the entire appellate process and terminated only when Judge Fullam acted on the mandate of our court…." *Id*. at 568. The mandate in *USX* was closer to the "ministerial" spectrum of cases, but the Third Circuit nonetheless found that the district court's action upon the mandate is what effectuated and implemented the appellate court opinion.

As the Federal Circuit noted in *Exxon Chemicals*, although some cases involve merely "ministerial" directions to the district court, many cases require a more robust interpretation by the district court of the appellate mandate. 137 F.3d at 1483. There is no separate rule for "ministerial" mandates as opposed to more complicated mandates, nor could such a rule be effectively implemented. To adopt such a rule would leave uncertain who should determine whether a mandate rises above the "ministerial" level. The interpretation of Rule 41(c) that comports with the law at the time of the amendment and allows for efficient and orderly implementation of appellate mandates is that the parties to the case are generally not obligated to act on the appellate mandate until after the district court issues its order implementing the mandate. At that time, the parties are obligated to follow the district court's order.

PAGE 11 – OPINION AND ORDER

Here, the remand from the Ninth Circuit was directed to the district court—instructing "the *district court* to grant Crickon's petition and instruct the BOP to reconsider Crickon's eligibility for early release under § 3621(e)(2)(B) without regard to his prior conviction for voluntary manslaughter." *Crickon*, 579 F.3d at 989 (emphasis added). There is nothing from the Ninth Circuit to indicate that the appellate court intended the parties to act on the mandate before the district court's order. Thus, the BOP was not obligated to reconsider Crickon's eligibility for early release until February 8, 2010, when Judge Haggerty issued his Order implementing the Ninth Circuit's mandate. The alleged misconduct is therefore protected under the due care exception to the waiver of sovereign immunity in the FTCA because the BOP's original denial of early release was pursuant to a regulation and the BOP was not obligated to reconsider that decision until February 8, 2010. Thus, this Court does not have subject-matter jurisdiction.

## 2. Discretionary function exception to the waiver of sovereign immunity

As a separate and independent ground for finding a lack of jurisdiction, the Court concludes that the waiver of sovereign immunity exception relating to the performance or "*failure to exercise or perform a discretionary function or duty*" applies to the conduct that Crickon alleges is tortious. For this reason as well, the Court does not have jurisdiction. 28 U.S.C. § 2680(a) (emphasis added). Crickon alleges that the BOP was required to reconsider Crickon's eligibility for the RDAP sentence reduction after the Ninth Circuit issued its mandate and that failure to do so was tortious. Considering whether Crickon is eligible for the RDAP sentence reduction is a discretionary function of the BOP. *See Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) ("Determining which prisoners are eligible to participate in RDAP is within the discretion of the BOP, as is the decision to grant or deny eligible prisoners sentence reductions upon successful completion of the program.") (citations omitted); *McLean v. Crabtree*, 173 F.3d 1176, 1182 (9th Cir. 1999) (noting that the statute governing RDAP "is

PAGE 12 – OPINION AND ORDER

replete with discretionary language contemplating the BOP's implied authority to design the sentence reduction treatment program"); *see also* 18 U.S.C. § 3621(e)(2)(B) (2008) (establishing that after completion of RDAP the sentence of a prisoner *may* be reduced).

Crickon alleges that the BOP failed to perform its duty to reconsider Crickon's eligibility for a sentence reduction. The Court finds that no such duty arose until February 8, 2010, but even assuming that the BOP did have such a duty as of October 19, 2009, failure to perform such a discretionary duty or function is expressly excluded from the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a) (2006). Thus, sovereign immunity has not been waived and the Court does not have jurisdiction.

## B. Crickon's Claims Fail on the Merits

Even if this Court were to consider Crickon's claims on the merits, his claims fail because the BOP was under no obligation to reconsider his early release until February 8, 2010, and even if it did have an earlier obligation, given the discretionary nature of the conduct, Crickon does not and cannot allege harm that is not unreasonably speculative.

### 1. Defendant had no obligation to reconsider Crickon's early release until February 8, 2010

As discussed above, the BOP was not obligated to reconsider Crickon's early release eligibility until after the district court's order on February 8, 2010. Because Crickon was released on February 9, 2010, there is no possible set of facts that he could allege that would state a claim against the BOP for failing to timely reconsider Crickon's eligibility for early release.

### 2. Even if Defendant had an obligation to reconsider Crickon's early release on October 19, 2009, Crickon fails to state a claim

Assuming, *arguendo*, that the BOP was obligated to reconsider Crickon's eligibility for the RDAP sentence reduction as of October 19, 2009, Crickon's allegations would still fail to state a claim. The BOP was not ordered to provide Crickon with early release pursuant to RDAP,

PAGE 13 – OPINION AND ORDER

but merely to consider his eligibility for early release without regard to his previous conviction. Crickon does not argue that the original 2007 decision denying him early release was improper (nor could he, based on the due care exception to the waiver of sovereign immunity and the statute of limitations). Instead, Crickon argues only that the conduct of the BOP in failing to reconsider his RDAP eligibility after October 19, 2009 was tortious.

Crickon alleges no facts showing that the BOP's failure to reconsider his RDAP eligibility for 16 weeks was unreasonable or unusual. For example, he does not allege how long RDAP eligibility decisions generally take or that if the BOP had reconsidered his eligibility a favorable decision would have been reached in time to make any difference in his release date.

Additionally, the harm Crickon alleges is that he was improperly detained in prison for longer than he should have been. First Am. Compl. ¶¶ 16, 23, 24. Although Crickon brings a claim for negligence and a claim for false imprisonment, when reviewing claims under the FTCA, courts in the Ninth Circuit look beyond a party's characterization of the claim to the alleged conduct on which the claim is based. *See Snow-Erlin v. United States*, 470 F.3d 804, 808-809 (9th Cir. 2006), *rev'd on other grounds by Millbrook v. United States*, --- U.S. ----, 133 S. Ct. 1441, (2013)); *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990). When the only harm alleged in a complaint is that the United States kept a person imprisoned for too long, there is no claim independent of a claim for false imprisonment. *Snow-Erlin*, 470 F.3d at 808-809. Thus, Crickon's claim for negligence fails.

Under Oregon law, a necessary element of Crickon's claim for false imprisonment is that the BOP kept him imprisoned him unlawfully. *See Buckel v. Nunn*, 891 P.2d 16, 21 (Or. App. 1995); *see also* First Am. Compl. ¶ 4. It is undisputed that if the BOP had reconsidered Crickon's eligibility and denied him early release, that decision would have been within the

discretion of the BOP, would not be reviewable by this Court, and would not be actionable. *See Reeb*, 636 F.3d at 1227 ("Accordingly, any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court."). Thus, in order to claim that he was imprisoned unlawfully Crickon must show that he would have been found eligible for early release. Crickon served the amount of time to which he was sentenced, with the applicable reduction for good behavior. If he would not have been found eligible for early release under RDAP, none of the time Crickon served in prison was unlawful. Crickon does not allege that he would have been found eligible for early release, nor does he allege any facts permitting an inference that he likely would have been found eligible for early release upon reconsideration by the BOP.

Further, Crickon does not allege any facts supporting the conclusion that even if he had been deemed eligible for early release after October 19, 2009, he would have been able to complete RDAP in time to reap any benefit from that decision. In other words, if the BOP behaved as Crickon claims it should have, and determined on October 20, 2009, that Crickon was eligible for early release upon his completion of RDAP, Crickon fails to allege facts showing that such a decision would have resulted in a release date earlier than February 9, 2010. In his original complaint, Crickon alleged that he completed RDAP on February 9, 2010, which is the date he was released. His Amended Complaint is silent as to his RDAP completion date, but the parties agreed at oral argument that it was on or within a few days of February 9, 2010. If Crickon were deemed in October 2009 eligible for early release upon successful completion of RDAP, he still would have had to complete RDAP in order to be released early. Under Crickon's theory of recovery, he must plead some facts showing that but for the BOP's allegedly tortious conduct after October 19, 2009, Crickon would have completed RDAP in time to obtain some

PAGE 15 – OPINION AND ORDER

early release benefit. Without such allegations, there is no harm caused by the BOP's failure to reconsider Crickon's eligibility for early release.[4]

Even if it were appropriate to consider the merits of this case, Crickon is unable to assert a cognizable claim under the facts alleged in this case. He does not allege facts supporting a claim that his detention was unlawful and the harm alleged requires too much speculation—that Crickon would have been deemed eligible for early release after October 19, 2009, and that he would have completed the RDAP program in time to get released before February 9, 2010. Such speculative harm fails to state a claim under Rule 12(b)(6).

The Court previously provided Crickon with the opportunity to replead and cure the deficiencies in his complaint. Although he filed an Amended Complaint, he failed to cure all of the deficiencies. The Court finds that further amendment would be futile. Accordingly, the Court does not grant leave to replead.

## CONCLUSION

Defendant's Motion to Dismiss (Dkt. 31) is GRANTED. This case is DISMISSED with prejudice.

**IT IS SO ORDERED**.

DATED this 28 th day of May, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[4] This deficiency is a separate ground for dismissal of the negligence claim, even if such claim were cognizable as a claim independent of the false imprisonment claim.

PAGE 16 – OPINION AND ORDER